UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMICA BRANSCUMB,

    Plaintiff,

v.

HORIZON BANCORP, INC., a financial
institution d/b/a HORIZON BANK,

    Defendant.
_____/

Case No. 1:23-cv-53

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Tamica Branscumb brings claims under 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") against Defendant Horizon Bancorp, Inc. ("Horizon"). Branscumb alleges that Horizon discriminated against her on the basis of race when it froze her bank account due to a purportedly suspicious deposit. Before the Court is Horizon's motion to dismiss the complaint for failure to state a claim upon which relief can be granted (ECF No. 8). For the reasons stated below, the Court will deny the motion.

### I. FACTUAL BACKGROUND

Branscumb is an African-American woman who held a checking and savings account with Horizon until April 2022. (Compl. ¶¶ 1, 7, 46, ECF No. 1.) On March 23, 2022, Branscumb visited Horizon's St. Joseph, Michigan branch to deposit a $27,616.14 check that her attorney had sent her from the settlement of a lawsuit. (*Id.* ¶¶ 9, 11.) However, "[t]he white clerk to whom she . . . presented the check questioned [its] authenticity and source." (*Id.* ¶ 10.) Branscumb explained the source, but the clerk responded, "If the check came in the mail, it's probably not

real." (*Id.* ¶¶ 11-12.) Branscumb deposited the check, and the clerk said she could access $5,000 from it the next day. (*Id.* ¶¶ 14-15.)

Three days later, Branscumb went to a different Horizon branch in Benton Harbor, Michigan to withdraw the $5,000. (*Id.* ¶¶ 16-18.) When she attempted to do so, "[t]he white teller alerted the African-American branch manager, who glared at her and asked her name, despite holding and looking at her driver's license and debit card." (*Id.* ¶¶ 18-19.) The manager told Branscumb that "the check look[ed] suspicious." (*Id.* ¶ 21.) After Branscumb said the check was from a legal settlement, the manager "told [her] loudly, 'I can't give you the money because this check is fraudulent' in the presence of at least two other people." (*Id.* ¶¶ 22-23.) Horizon employees did not try to verify the check's authenticity by contacting the bank that the money had come from. (*Id.* ¶ 25.) Because the Benton Harbor branch refused to let Branscumb withdraw her money, she left and called the St. Joseph branch to explain the problem. (*See id.* ¶¶ 26-28.) The clerk at the St. Joseph branch—the same person she had interacted with three days earlier— responded that Branscumb had "'never deposited a check this large.'" (*Id.* ¶¶ 27, 29.)

Soon after Branscumb left Horizon's Benton Harbor branch, the branch "froze[] her account and disabled her debit card." (*Id.* ¶ 30.) Three days later, on March 29, 2022, Branscumb's lawyer called the bank to discuss the issue. (*See id.* ¶¶ 36-37.) The bank let the check clear after speaking to the lawyer, without "question[ing] the lawyer's identification or the information about the settlement that he provided." (*Id.* ¶¶ 37-38.) However, Branscumb's debit card remained frozen. (*Id.* ¶ 39.) When Branscumb contacted Horizon on April 1, 2022, she was told that "if there is a fraud alert the account will be frozen until the check clears." (*Id.* ¶¶ 40-42.) Branscumb then explained that the check had already cleared. (*Id.* ¶ 43.) In response, a Horizon employee "told Ms. Branscumb something that did not make sense." (*Id.* ¶ 44.) Branscumb's debit card

stayed frozen through at least April 6, 2022, eight days after the check had cleared.  (*Id.* ¶ 45.) Branscumb closed her account with Horizon later that month.  (*Id.* ¶ 46.)

Branscumb alleges that Horizon's treatment was racially discriminatory.  She claims that because of racial stereotypes, Horizon employees assumed that her "having money must be evidence of fraud or wrongdoing" and therefore viewed the check as fraudulent.  (*Id.* ¶ 24.) Branscumb alleges that Horizon's actions caused her financial hardship, as she could not pay her bills or buy necessities with a frozen debit card.  (*See id.* ¶¶ 31, 33-35, 41.)  She also alleges that the discrimination and its financial impact caused her significant emotional and physical distress. (*See id.* ¶¶ 24, 32-33, 47.)

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for failure to state a claim.  "While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true."

3

*Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

Courts are generally bound to consider only the complaint when resolving a motion to dismiss unless the Court converts the motion to one for summary judgment. *Wysocki v. Int'l Bus. Mach. Corp.*, 60 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

Branscumb brings discrimination claims under both § 1981 and the ELCRA.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  To prevail on a § 1981 claim, a plaintiff must demonstrate that "the plaintiff had a contractual right that the defendant impaired; and [] racial discrimination drove the defendant's decision to interfere with the plaintiff's contractual right."  *State Farm Mut. Auto. Ins. Co. v. Max Rehab Physical Therapy LLC*, No. 18-13257, 2019 WL 6481719, at *2 (E.D. Mich. Dec. 2, 2019) (citing *Williams v. Richland Cnty. Child. Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012)).

The ELCRA provides that "a person shall not . . . [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . race."  Mich. Comp. Laws § 37.2302. To prevail on a claim under the ELCRA, a plaintiff must establish "discrimination based on a

4

protected characteristic [] by a person, [] resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations [] of a place of public accommodation." *Haynes v. Neshewat*, 729 N.W.2d 488, 492 (Mich. 2007).

The Sixth Circuit has explained that courts should "review claims of alleged race discrimination . . . brought under § 1981 and the Elliott-Larsen Act under the same standards . . . ."[1] *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018); *see also JM Adjustments Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2016 WL 3913712, at *4 (E.D. Mich. July 20, 2016) (applying this principle to motion to a dismiss). Therefore, the Court will analyze Branscumb's § 1981 claim and ELCRA claim together.

To survive a motion to dismiss, Branscrumb "is only required to 'allege [] the statutory bases for [her] claim[] and . . . set forth the factual predicate of [that] claim[].'" *Williams*, 489 F. App'x at 852 (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)) (alterations in original). Her "[c]omplaint need not present 'detailed factual allegations,' [but] it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that the defendant discriminated against the plaintiff based on race. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678-79). Branscumb must plausibly show that Horizon had discriminatory intent, where "'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). If a discriminatory explanation is plausible, "the mere existence of more likely alternative

---

[1] Branscumb contends that an ELCRA claim differs from a Section 1981 claim because the ELCRA does not require that discriminatory intent be the "but-for" cause of Horizon's actions. (*See* Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss, ECF No. 13, PageID.48.) Branscumb is incorrect; the ELCRA does require but-for causation. *Rouch World, LLC v. Dep't of Civ. Rts.*, 987 N.W.2d 501, 512 (Mich. 2022); *see also Gray v. AutoZoners, LLC*, No. 22-1069, 2022 WL 16942609, at *3 (6th Cir. Nov. 15, 2022) ("[Section] 1981 and the ELCRA both require plaintiff to establish that race is a 'but-for' cause of the injury.").

explanations does not automatically entitle a defendant to dismissal." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013).

Though Branscumb, in the absence of direct evidence of discrimination, is not required to establish a prima facie case using the *McDonnell Douglas* burden shifting framework to survive a motion to dismiss, *Keys*, 684 F.3d at 609, courts often consider the elements of a prima facie case when analyzing whether a plaintiff has plausibly alleged discrimination. *See, e.g.*, *Life for Relief & Dev. v. Charter One Bank, N.A.*, No. 12-CV-13550, 2013 WL 12246911, at *3 (E.D. Mich. Nov. 20, 2013) (using prima facie elements to analyze whether plaintiff stated Section 1981 claim); *Carter v. Shearer*, 596 F. Supp. 3d 934, 956-57 (E.D. Mich. 2022) (using prima facie elements to analyze whether plaintiff stated ELCRA claim).

A prima facie case for a discrimination claim against a commercial establishment without direct evidence of discrimination has three elements:

(1) plaintiff is a member of a protected class;

(2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and

(3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001); *see also Gray v. Autozoners, LLC*, No. 22-1069, 2022 WL 16942609, at *4 (6th Cir. Nov. 15, 2022), *cert denied*, 143 S. Ct. 2496 (2023) (citing and quoting *Christian*). Branscumb's complaint meets the first two elements: she alleges membership in a protected class, and banking services involve contractual relations, *see Johnson v. National City Bank Corp.*, No. 3:09CV–490–S, 2010 WL 569844, at *2 (W.D. Ky. Feb. 12, 2010). Horizon disputes the third element.

6

As to the third element, Branscumb makes no allegations about Horizon's treatment of similarly situated persons.[2] Though she alleges that Horizon "deprived [her of] the privileges and benefits of contracting . . . that white individuals have" (Compl. ¶ 49), this allegation is insufficient, as "conclusory allegations that [a plaintiff] was treated differently due to her race, without more," do not satisfy the third element of a prima facie case. *Coleman v. JPMorgan Chase Bank, N.A.*, No. 3:17-CV-00741-GNS-CHL, 2018 WL 6183285, at *4 (W.D. Ky. Nov. 27, 2018) (citing *Southfield*, 727 F.3d at 504, 506). Instead, Branscrumb suggests that the hostility of Horizon's actions indicates the bank's discriminatory intent.

The Sixth Circuit has set out three factors that bear on whether a given action was "markedly hostile." *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009). "[C]ourts [should] consider whether the conduct is: '(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.'" *Id.* (quoting *Christian*, 252 F.3d at 871).

Horizon's alleged actions allow a reasonable inference that the bank discriminated against Branscumb because of her race. While a bank may be justified in informing a customer about a potentially fraudulent check or temporarily freezing a customer's account, Horizon's actions went beyond that. First, rather than merely conveying suspicion about the check, the bank's employees claimed that Branscumb was trying to cash a fraudulent check, even after she explained the check's

---

[2] In her brief opposing the motion, Branscumb cites to an affidavit from her lawyer indicating that his other clients have not had similar issues depositing settlement checks. (Piper Aff., ECF No. 13-1.) However, as the affidavit was not referred to in the complaint, the Court cannot consider it when ruling on a 12(b)(6) motion. Furthermore, as the affidavit does not specify whether those other clients banked with Horizon, it does not bear on the question of whether Horizon treated Branscumb differently than it treated other clients who were not members of the protected class. Branscumb also argues that Horizon treated her differently than her white attorney, because the bank's employees let the check clear after talking to him on the phone. (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss, PageID.53.) However, Branscumb and her attorney were not similarly situated; the bank may have believed the attorney because he had written the check.

source.  The clerk at the St. Joseph branch said, "If the check came in the mail, it's probably not real,"[3] and the manager at the Benton Harbor branch publicly declared, "I can't give you the money because this check is fraudulent."  (Compl. ¶ 12, 23.)  The Benton Harbor manager also seemed to question Branscumb's identity without reason, "glar[ing] at her and ask[ing] her her name, despite holding and looking at her driver's license and debit card." (*Id.* ¶ 19.)  Additionally, though Branscumb told Horizon that her lawyer had sent the check, Horizon did not contact her lawyer or his bank to investigate, and only let the check clear after Branscumb's lawyer called Horizon.  Most significantly, once the check had cleared and the possibility of fraud was discounted, Horizon kept Branscumb's debit card frozen for eight more days, including five days after Branscumb called the bank about the problem.  Horizon informed Branscumb that it usually reopens accounts once a suspicious check has cleared, and indicated that keeping an account frozen for over a week violated its own policies.  Collectively, these actions make a discriminatory motive plausible.

Horizon contends that its employees were simply following the bank's fraud-prevention policies, because the large dollar amount on Branscumb's check appeared suspicious.  For instance, Horizon argues that banking regulations support its initial delay on withdrawals given its suspicions about the check.  (*See* Def.'s Br. in Supp. of Mot. to Dismiss, ECF No. 9, PageID.29.)  Even at the pleading stage, alternative explanations for Horizon's actions are relevant.  *See Coleman*, 2018 WL 6183285 at *4 (citing *Southfield*, 727 F.3d at 505 ("The reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations.")).

---

[3] Horizon argues that this employee "did not accuse [Branscumb] of fraud but rather expressed concern that she might be a victim of fraud" because she was depositing a fake check.  (Def.'s Reply Br. in Supp. of Mot. to Dismiss, ECF No. 16, PageID.74.)  In fact, Horizon contends that none of its employees ever expressed suspicion about Branscumb's own actions.  (*See id.*)  However, given that Branscumb told the bank that she had gotten the check from a legitimate source, the employees' claims that the check was fraudulent imply that Branscumb was lying about the check's origins.  Horizon's argument is also undermined by the fact that one of its employees appeared to question Branscumb's identity, which would make little sense if the employees thought she was an unwitting victim.

8

However, as explained above, Horizon's desire to prevent fraud does not account for all of its actions. For instance, Horizon has not explained why its fraud-prevention policies would justify keeping an account frozen after it had let the check clear. Indeed, Horizon has offered no explanation for the eight-day delay in unfreezing the account.

Horizon also argues that Branscumb has not shown that a discriminatory motive is plausible because she has not shown any connection between the bank's actions and her race. (*See* Def.'s Br. in Supp. of Mot. to Dismiss, PageID.27.) However, a defendant's hostile treatment of a plaintiff can allow for an inference of discriminatory intent even if the defendant's actions lack a direct connection to race. *See, e.g.*, *Thompson v. JP Morgan Chase Custody Servs., Inc.*, No. 09–127–JBC, 2011 WL 1226496, at *3 (E.D. Ky. Mar. 29, 2011).

For example, in *Carter*, an African-American customer sued a store for discrimination after it reported her to the police for using a stolen debit card simply because her card was declined. *Carter*, 596 F. Supp. 3d at 942-43. Though there was no explicit connection between the defendant's actions and the plaintiff's race, the Eastern District of Michigan held that the plaintiff had stated a claim because the store's hostile actions made it plausible that it had a discriminatory motive. *See id.* at 956-58. As the court explained, "[I]f it is not common practice at [the store] to report all cards that are declined as stolen, it would be reasonable to infer discriminatory intent when such a report is made against an African-American woman." *Id.* at 957. Similarly, the fact that Horizon apparently violated its own policy in keeping Branscumb's account frozen makes it reasonable to infer discriminatory intent, even without a more specific connection to race. *See also Biddle v. Park Place Hotel, LLC.*, No. 2:08-cv-2235, 2008 WL 11417814, at *1, 4 (W.D. Tenn. July 25, 2008) (denying defendant's motion to dismiss where defendant's employee forced hotel guest to leave based on assumption he was homeless); *Thompson*, 2011 WL 1226496, at *2-

9

3 (E.D. Ky. March 29, 2011) (denying defendants' motion for summary judgment where defendant banking center manager accused plaintiffs of money laundering and kept hold on their account even after suspicious funds cleared).

Horizon contends instead that this case is analogous to *Southfield*, where the complaint was dismissed because the plaintiff did not show any connection to race. (*See* Def.'s Reply Br. in Supp. of Mot. to Dismiss, ECF No. 16, PageID.78-80.) There, the plaintiff alleged that the defendant bank had discriminated against it by refusing to extend its loan.[4] *See Southfield*, 727 F.3d at 503. The Sixth Circuit affirmed the district court's dismissal of the complaint, holding that an inference of discriminatory intent was unreasonable because the plaintiff's past failure to repay a loan was "the most obvious explanation" for the bank's refusal. *Id.* at 505. This "obvious alternative explanation[] simply illustrate[d] the unreasonableness of the inference sought." *Id.* Unlike the bank in *Southfield*, Horizon has not provided an obvious alternative explanation for its actions. As explained above, Horizon's desire to prevent fraud does not fully explain all of its actions.

Horizon also seeks to analogize the instant case to *Coleman*. (*See* Def.'s Reply Br. in Supp. of Mot. to Dismiss, PageID.79.) There, after the plaintiff tried to cash a voided check, the defendant bank froze her account and began an investigation. *Coleman*, 2018 WL 6183285 at *1. As part of the investigation, the bank questioned the plaintiff as to whether she had defrauded the person who was the source of both the voided check and several other checks. *Id.* The Court ruled that the plaintiff had failed to state a claim under Section 1981, explaining that "common sense would dictate that [the bank's] actions were proportionate to its stated interest to protect itself and

---

[4] The plaintiffs in *Southfield* brought a claim under the Equal Credit Opportunity Act, not Section 1981, but discrimination claims under the statutes are analyzed similarly. *See JAT, Inc. v. Nat'l City Bank of the Midwest*, No. 06–11937, 2008 WL 2397657, at *4 (E.D. Mich. June 10, 2008); *see also Coleman*, 2018 WL 6183285 at *3-4 (applying *Southfield*'s holding to a Section 1981 claim).

its customers." *Id.* at *4. There, the bank's actions made sense given its suspicion about the source of plaintiff's checks. Here, on the other hand, Horizon's actions—such as the extended freeze—do not make sense given its suspicions.

Because Branscumb's allegations support the inference that Horizon's employees acted with discriminatory intent, Branscumb has stated a plausible claim under § 1981 and the ELCRA.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Horizon's motion to dismiss (ECF No. 8). An order will enter consistent with this Opinion.

Dated: July 21, 2023            /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE